2-09-01 Morning, this is Philip S. Hodge, Defendant Scalding, arguing on behalf of the defendant Philip Hodge, Defendant Scalding, arguing on behalf of the people, Mr. Barry Jacobs. Good morning, Counsel. Ms. Scalding? Good morning, Your Honors. Good morning, Counsel. May it please the Court, I am here this morning on behalf of the defendant, Philip Hodge. This is a case that started out as a violation of a city noise ordinance, escalated into an argument about the towing of a new car, and ended up with Mr. Hodge being convicted of three counts of aggravated battery to a peace officer and being sentenced to eight years in prison. I have to say it was a little difficult this morning to determine how to structure the argument because frankly this case I think almost reads like an evidence exam. There's virtually every issue you could conceive of in a criminal appeal. There's an indictment issue, there's a reasonable doubt claim, there's an evidentiary issue, there's a jury instruction issue, closing argument issue, an effective assistance of counsel claim, and some sentencing issues. One of the few issues we don't have in this case relates to the correctness of the trial court's ruling on a motion in limine. And the reason for that is in this case there weren't any motions in limine filed by defense counsel. But that underlies part of our claim that defense counsel did not afford Mr. Hodge effective assistance because he not only affirmatively elicited prior convictions of the defendant that would not have been admissible at all under Montgomery, but he failed to move prior to trial to exclude other convictions that may have been admissible but that potentially could have been excluded on the ground that they were more prejudicial than probative. But wasn't it part of his trial strategy to show just how far the defendant had come in terms of turning his life around and didn't he use those prior convictions to that end to further the trial strategy? Well, I think his strategy may have been to say that Mr. Hodge used to be a bad person and now he isn't. I don't believe that's a reasonable strategy. To me, it's the equivalent if you have a client in a domestic battery case, you certainly wouldn't say to your client, when did you stop beating your wife? You don't set up a, certainly the Eleanor Supreme Court and this court has recognized the highly prejudicial impact of other crimes, other convictions. In fact, in the Naylor case, which we cited in our brief, that court considered the defendant's conviction just for impeachment, but it was an inadmissible conviction. And the Supreme Court recognized the highly prejudicial impact, even when you're talking about a judge, of being able to separate the character of the defendant from the prior acts. So to the extent it was his strategy, no, it was not a reasonable strategy. This case came down for three things for the jury to decide. The jury had to decide if Mr. Hodge struck the officers, had to decide even if he struck the officers, if he did it knowingly, and whether he caused bodily harm. This was essentially a credibility contest between the civilian witnesses who testified for the defense and the state witnesses who were the two police officers. The evidence of bodily harm to the officers in this case was very slight and, in some instances, non-existent. There was even, the jury had an issue as to whether there was knowing conduct here. If you'll recall, the jury sent out a note asking for a definition of knowing. There were also some questions about the fact that apparently a videotape had been taken of this incident, at least some parts of it, but it had disappeared before trial. So this came down to who did the jury believe? Did it believe the state witnesses, or did it believe the defendant? And to the extent that these prior bad acts impacted his credibility, it certainly had a devastating impact on the outcome of the trial. The evidentiary errors- So then you're submitting that the second prong of Strickland was met by the, that there would be a reasonable probability- Correct. That the result would have been different had these prior- Correct. Certainly, because his credibility was certainly at issue here. And these prior bad acts that weren't even admissible certainly had an impact on the weighing of his credibility. There are other evidentiary errors that occurred in this case which had also substantial impact on the fairness of trial. And I believe one of the most significant errors in terms of the evidence relates to an alleged prior inconsistent statement by Philip Hodge's wife, Vicki Hodge. Officer Garcia testified that Vicki Hodge, at the police station following this incident, that Vicki Hodge allegedly said to her, I can't believe Philip was that angry and would strike or run from the police officers because he's not normally like that. There were three problems with how this evidence was handled. First of all, the defense was not allowed to introduce evidence through a third witness, Yvonne Munoz, to prove that this statement was never even made. Secondly, the jury was not properly instructed on this statement. The jury was not told which committee comments direct that they be told. They were not told that it's for them to decide whether, in fact, this statement was made. And that was certainly at issue in this case. Thirdly, the prosecutor used this statement in closing argument as substantive evidence of Mr. Hodge's guilt. There were several paragraphs during his closing argument where he went on and on and on about what Vicki had apparently or supposedly said at the police station. And how she was there, she saw it, she knew what happened, she saw her husband strike the police officer. And used that to say, look, even his wife, even his wife is saying that she knows that he committed this crime. But when pointed out, didn't he correct that, though, during the course of the argument? Not initially. But during the course of the argument? During the course of the argument when he continued, and finally defense counsel objected. But the trial judge overruled that objection. So the jury, I don't think, really understood that this was not to be used for the purpose for which it was used. So even if we were to find in defense counsel, if we were to find that he was not ineffective, you think we should reverse the case because of these errors? Yes, because they also had an impact on the credibility of the defense witnesses. And this is a case, I mean, very similar to the Naylor case again. In the Naylor case, there were two police witnesses who testified, two of them, who said they bought drugs from the defendant in a particular housing project. They had drugs. They said, we got those drugs from the defendant. The defendant said, I was there, but I didn't sell the drugs. They must have mixed me up with someone else. This is the same kind of incident we have here. The police said, he struck us. The defendant admitted that he grabbed the keys from Officer Garcia's hand. So that wasn't the issue. The issue was, did he knowingly strike them and did he cause them bodily harm? There was no, there wasn't one, of course, this leads to the indictment issue. There were no photographs of any harm to the officers with the exception of one photo where Officer Garcia had a red mark on her right hand. That was not the hand in which she held the keys. The indictment, and what the state did in this case was parcel out each act to give separate convictions. So the indictment said that Mr. Hodge grabbed the keys from Officer Garcia's hand, that Mr. Hodge struck her about the body, and that Mr. Hodge pushed Officer Lopez. So it was significant that he was led to believe that he should be defending against causing her bodily harm by grabbing the keys. That was his strategy through the state's case. So at the close of the state's case, they actually broadened the scope of the charge against him by striking the part about the keys. And then the prosecutor led to that, led to the argument of the prosecutor saying it doesn't matter which hand, you can find him guilty of that count regardless of which hand it was. So again, that's another issue where we believe he was not given a fair trial. Let's talk about this jury instruction, the IPI 3.11. You're submitting that they looked at this, omitted this bracket of information, and it was crucial that that information be in there. What weight should we give to that argument in comparison to all of the other arguments that you're making? Well, I think with respect to that alleged prior inconsistent statement, that it's really there's three errors that cumulatively affected how that evidence was produced. No, there was no objection. The defense never objected to the errors in which you have instruction coming in. No, the defense counsel did not object to a lot of things during the trial. Correct. Certainly now the state with respect to whether the defense was entitled to put on evidence, separate evidence of whether the statement was made, the state doesn't dispute that. It certainly wasn't hearsay. Yvonne Munoz's testimony was not hearsay. She was not testifying to an assertion. She had personal knowledge. She was there. Strangely, there is not a lot of case law on this issue of what a party's right is with respect to evidence when they simply deny the statement was made. There's a lot of case law saying when a prior inconsistent statement, when evidence of a prior inconsistent statement is introduced, the party should have the opportunity to explain the making or explain the circumstances under which it was made. I don't know if it's just so self-evident that if a party denies making it, certainly this is relevant evidence and you have a right to put on relevant evidence. Well, one can argue certainly that that becomes a trial within a trial. He said, she said, no, she said, he said. Which I think is why it was so significant that the defense be allowed to put on another witness who was there the entire time and could say, no, she did not say that. And then lead it to the determination. Lead it to the trier effect with proper instructions, which were not given here. What do you make of Officer Wilberger's testimony? You know, I think that's probably another instance where the defense attorney should have done a motion in limine. I don't see the relevance of. Isn't it relevant that your client was saying, well, no, I didn't struggle or no, I wasn't angry. And then what he told Officer Wilberger is evidence that he was angry, that, you know, I'm really mad or I would have beat them or something to that effect. What he was angry at, and I would point out too, according to Officer Wilberger himself, he was not at the time he supposedly made this statement, he was not angry, he was not agitated, he was calm.  But he was not expressing anger over the incident at the spot of the traffic stop. He was expressing anger over the threat subsequent to that. But doesn't that kind of go to the state of mind and what his feelings were and his actions or his demeanor at that time? I think if he would have sprayed me, I would have beat him. I think it goes to his reaction to the threat from Officer Lopez, but that was subsequent to this incident. Aren't you really, isn't that really a narrow view of admissions? I mean, the rule of admissions is any statement or conduct of the defendant from which, taken together with other evidence you can infer guilt, that's an admission. So it doesn't have to be directly related. If it shows his negative attitude towards police officers, doesn't it come in? Well, I think the problem is that if you're treating it as an admission, it really is not relevant for that purpose because it didn't relate to the incident in question and related to subsequent events. But it's a demonstration of his attitude, the combative attitude. Isn't that enough? He didn't dispute that he was adrenalized, so I don't know that it really adds anything to that other than to say he reacted badly to a threat from the officer after the incident. Are you saying it's to the note? Certainly that would be part of the problem, yes. He didn't deny the conversation. He testified he had a conversation but couldn't recall what he said to the officer. Correct. I'd like to return for just a minute to the indictment question. The amendment really didn't alter the nature or the elements of the charge against the defendant, did it? No, it was still an aggravated battery charge. Right. And so if it didn't alter the essential elements of the charge that the state had to prove, then it really was just a formal change, correct, and not something substantive. I don't think we're not disputing that it could be seen as a formal defect. The issue is that even if it's simply a formal defect, if it prejudices or surprises the defendant, that that is the error. Because, again, this is the kind of case where they're parceling out each separate act. So, for example, I think it's the Coleman case where it was a murder. The means in which the murder was committed was changed. But it's still a murder and there's only one count of murder. I think the prejudice here is because of the fact that they're seeking separate convictions based on different acts. So he was defending against this particular act, admitting that he grabbed the keys but said, I didn't touch her hand and I didn't strike her, I just grabbed the keys from her hand. So the prejudice is that his defense was affected by this because now he has a new act that he's trying to defend against without really prior notice. But he's saying he didn't strike her at all. Correct. Right. So how, I mean, if it's left hand, right hand, and he says, I didn't strike her at all, how does that prejudice him? Because the jury is now being allowed to, and she did, you know, she had some red mark on her right hand. So the jury is now being allowed to find he's guilty with relation to Officer Garcia's hand for something that he was never told was going to be the basis. But that had to be your defense before, too. If there's a red mark on the hand, your defense had to be it's from grabbing the keys, not from striking, correct? You know, I don't know that that was the nature of his defense. Yeah, but that could possibly be. All right. Thank you. Mr. Jacobs. Good morning. Very Jacobs on behalf of the people of the state of Illinois. May it please the court and counsel. I'm going to begin where this court just left off in questioning with the first issue concerning the change to the indictment. I believe this court was concerned with whether or not this change was changed some language in the manner that count one was alleged to have been committed, whether this was a formal change or a substantive change. Clearly. Well, counsel concedes it was formal. But you want to address her comment, her point regarding the prejudice, please. I do, Your Honor. Thank you. Any time a crime is charged in the alternate, there's potential prejudice to the defendant. The prejudice being that he could be found guilty of committing the crime of aggravated battery in more than one regard. In fact, in this case, count to alleged just that he the defendant struck officer Garcia about the body. The state's position is and the way I originally read the brief was that defendant was challenging the ability of the state to amend this charge. And as your honor indicated, it's been conceded here this morning that the state had the ability to amend this formal defect by changing the manner in which the body arm was committed. This strikes me as more of a question of the prejudice being the three convictions as opposed to two convictions. And the remedy appears to be one of merging counts one and two, which, by virtue of the amendment, virtually say alleged the same conduct. Except that count one, of course, indicates that the hand was struck. Count to indicating that she was struck about the body. But wasn't counsel. Go ahead. No, but wasn't counsel's point that he the amendment was made after the evidence had come in? Yes, to conform to the evidence. Right. So wasn't her point that he didn't know what he was defending against when it was done at that point? Not necessarily. And if you know up front that there are two different ways that an offense is being charged, that's one thing. But if you don't know until afterwards, then doesn't that prejudice the defense? It's the state's position to a lesser extent. The defendant was on notice that he was being charged with aggravated battery to a peace officer and that the manner in which it was charged was that he caused bodily harm. The exact methodology of how he did that, I think the case law is clear. I believe it's the Coleman case that was referred to by counsel. Finding that the means to use to accomplish death were not essential or a formal part of the indictment. So I also cited my brief, the trend away from this formalism in the indictments because there are other means. In this case, defense counsel did actually seek discovery and was aware of what the evidence would show. He was sentenced concurrently here too. Yes. If you don't mind, I'd like to move on to the ineffective assistance of counsel. Tell me how it was trial strategy to let in all those convictions that were outside of Montgomery. Well, certainly the law is clear. Successful trial strategy is not ineffective assistance of counsel.  It's not the state's position that this was wise of the defendant. Nor was it successful. Nor was it successful, but it was not incompetence of counsel. As Your Honor's noted with Ms. Kellenich, defendant's theory here. Not only did he get into the prior convictions, he got into what the defendant was sentenced to. He did. So how was that a trial strategy? How's that effective or efficient? Your Honor, it's the state's position that before this counsel, and he did start this in his opening statement, that this was a man being prosecuted because he was a good man being prosecuted because of his bad past. To make that assertion, the defendant had to, or the defense counsel had to show that this man had a bad past. To the extent that he did, that's questionable, but it is a matter of trial strategy in my mind, in the state's mind, and therefore not an effective assistance of counsel, even though it wasn't successful. He was consistently referred to as a reverend throughout the trial, incapable of doing this kind of behavior. And let's face it, this was somewhat extraordinary behavior. The stepson had been stopped for a noise violation, carve out to be impounded. The stepson apparently calls the defendant and his wife, and they rush to the scene to try to take the car. It's an extraordinary situation based on the circumstances of the situation. I think it was important for counsel to try to show that this was uncharacteristic behavior for this man, and therein the strategy, although not successful. What about the other errors and failures of defense counsel, for example, not objecting to the 311 instruction and omitting the words that should have been in the instruction? Shouldn't we look at those together with his supposed trial strategy and determine whether or not overall the defendant was deprived of effective assistance of counsel? Regarding the jury instruction and the inconsistent statements made by the defendant's wife, Vicki Hodge, I believe the Hodge case, the Illinois Supreme Court case, stands for the proposition that unless the giving of the instruction 311, IPI 311, was grave error affecting substantial rights, the court should find that the defendant has forfeited this issue. And it's the people's position, as I argued in my brief, that giving IPI 311 didn't actually remove the task of determining whether or not Vicki Hodge made that inconsistent statement at the station. There was evidence, and it's somewhat glossed over in I think both briefs, but I do call forth in mind that Vicki Hodge had made this very same statement while she waited with Officer Garcia at the scene, and she did testify that she waited until the end, until the car was towed. In rebuttal, when Officer Garcia testified, she testified initially that Vicki Hodge had made this very same statement that she couldn't believe, I'm paraphrasing, could not believe her husband had acted this way and had struck the police. The defendant is only challenging that second statement made at the police station. It's somewhat mind-boggling to think that that error of not challenging that IPI 311 would be substantial enough that it would cause conviction when we have the other statement out there that was unrebutted by a defendant that Vicki Hodge in fact made this very same statement while she was standing at the scene with Officer Garcia. But doesn't the omission of that bracketed statement, the bracketed information, coupled with the prosecutor arguing that that was substantive testimony, make the jurors think, yeah, it was said and it's this important? I mean, isn't that – shouldn't that bracketed information have been included to give the defendant a fair trial? It should have been included. The question of whether or not it deprived him of a fair trial is a separate question. And the State's position is that we don't believe that this deprived Mr. Hodge of a fair trial based on the fact, as I just indicated, that there was this prior statement. The jury could have found either way that the statement was made at the scene or the statement was made at the police station. Yeah, but the prosecutor in this case talks about in his – I think it was in his closing, he talks about when Vicki was at the police station afterwards, she made this statement, those are her words, you know, arguing that it was substantive testimony and making the jurors then certainly believe that it was not – they weren't impeaching her, but this is exactly what she said. And then that, coupled with the jury instructions, is not saying, if you find that this statement was made, it just goes right into, this statement was made so you should give it this credibility or the deference that this statement was made. I would just point out that the prosecutor did make this comment in rebuttal to – Was it a rebuttal? Yes, the rebuttal closing argument after defense counsel had basically indicated that both Officer Garcia and Officer Lopez were being untruthful and – All the more reason. It goes down to the credibility. Was it said or wasn't it said? And that's my point. If you determine – if it is for you to determine what weight should be given to the statement, not if it's for you to determine whether the statement was made and what weight to be given to the statement. I guess my question is, your brief, it kind of glosses over this and it's really not that important. Isn't that a – isn't the fact that the jurors are told this statement was made and this is how you should determine what credibility, as opposed to the statement – you determine whether or not it was made. Again, the state's position is that lack of an instruction to determine whether or not the statement was in fact made was harmless error. No motions in Luminae were filed in this case, either by the defense or by the state. That's correct. My recollection, yes. However, that is consistent with my prior argument that this was a matter of trial strategy. It's unclear why the strategy was chosen, but it appears that they – because the defense counsel didn't go to great lengths to actually lay out the earliest convictions, what the sentences were, that this was a need to show that this man had been redeemed as incapable of acting the way he behaved. What was the evidence of harm to Officer Lopez, bodily harm to Officer Lopez? You know, there was a direct question asked during the examination of Officer Mirko Lopez, and it concerned the question of bodily harm. The question was, basically, after Officer Lopez had described how the defendant had come at him and hit him in the chest, the question was, did that hurt? And Officer Lopez gave a somewhat unresponsive answer, saying – and again, I'm not quoting, but paraphrasing – yes, hard enough to push me back. Hard enough to, you know, push me back. Yes. So did he answer that it hurt? The defense position is that that's a statement of force. I argued in my brief, and people maintain, that the fact finder, based on that statement of sensation, we, of course, are looking at this in hindsight, but the fact finder could have surmised that reasonably, that the officer was saying, answering the affirmative, yes, it hurt. It hurt hard enough to push me back. But aren't there plenty of cases out there where the courts have reversed a trial court where a police officer doesn't testify as to any physical damage or feeling any pain? There are. I mean, the Fore case, for instance. Correct. And I've cited two in my brief where, in fact, there was a reversal on the very same argument, and the court somewhat found any evidence of pain. And in one case, I'm trying to blank on the name at the moment, in the – I'm sorry, in the Ratuno and Claudio. In the Claudio case, the first district found that it was self-evident that by kicking a police officer, that was proof of causing bodily harm within the unit of section 12.3, despite testimony by the officers that they didn't sustain any real injuries. Similarly, the Ratuno case. But if you're being kicked or you're being punched, one can reasonably infer that there was probably some pain or there may be some injury. But I think you said something about a sensation when he's being pushed. There is a case out there. I think it's – is it McBrien where they said that a tingling, quote-unquote, tingling sensation does not equal an injury. Isn't that – isn't a push as opposed to a punch or a kick – certainly we all know and a jury can reasonably infer that if you're punched and you're kicked, that's going to hurt. And in the McBrien case, I believe the facts were that the officer had arrived at the door and felt the tingling sensation, which was later determined to be mace or some sort of substance. And that was not – that wasn't sufficient for an act of theft. The people that submitted the facts of this case are closer to the Claudio case, the Ratuno case, where the fact finder's common knowledge about pain and bodily harm could have led the fact finder to believe that based on this answer given by Officer Lopez, he had experienced bodily harm in the form of pain. I'm sorry, say that again. That based on Officer Marco Lopez's answer, a reasonable fact finder could have found that he experienced bodily harm based on the temporary pain that he felt when he was driven back. Where does it say he had temporary pain when he was driven back? The record is not clear. As I said, the answer was somewhat unresponsive that he gave, but the fact finder is the body that heard and observed Officer Lopez testify. But the fact that Officer Lopez testified that maybe a push might – that the jurors may have inferred that a push caused bodily harm, might that have something to do with the fact that they heard that he had four or five prior felony convictions? I don't believe at that point those convictions were known to the jury, of course. Well, certainly not at that point, but when they went to deliberate, they did. Certainly in deliberating, yes, that they had an effect. However, as I indicated earlier, although not of sound in hindsight, perhaps a sound strategy, it was an endless trial strategy. Thank you. Thank you, counsel. Ms. Skelman. Thank you. First of all, Your Honors, I want to note that it is absolutely not true that there's evidence that Vicki Hodge made the exact same statement at the scene. There was – Officer Garcia said during the rebuttal portion that Vicki said to her at the scene that she didn't know what was wrong with Philip and didn't know he was going to charge out of the vehicle at the officers. Nothing about he struck the officers. And I would say, you know, Mr. Hodge himself admitted that he was adrenalized. He said he grabbed the keys. He even, I think at one point, said he pulled his wrists away from Officer Lopez. So I think it's reasonable to say, yeah, things – obviously things got out of control, but that wasn't really the issue here. This didn't turn into a resisting arrest prosecution. This became an aggravated battery prosecution where the state had to prove that he not only struck these officers and caused bodily harm. And certainly that's exactly what this alleged statement went to, and the jury was told that his wife had said this and that it was true. And that's certainly prejudicial, especially in light of the way the jury was instructed. With respect to the ineffective assistance of counsel claim, of course you're not ineffective simply because your strategy is not successful or the wisest strategy, but it has to be a reasonable strategy. Mr. Jacobs said that the defense theory was that Mr. Hodge was a good man being prosecuted because of his bad past. That was not the defense theory. There was no evidence presented that these particular officers had some kind of vendetta against the defendant because of his past. His strategy, as it was, was to say he used to be a bad person, but now he isn't. And that is not a reasonable strategy. And to even go so far as to say not only does he have these series of felonies, so many that he can't remember them, but he's actually been sentenced to prison on several occasions. What does that do but paint your client as a dangerous person who's also a violent person who judges have seen fit to put in prison? That simply is not a reasonable strategy. What this case comes down to is did Philip Hodge receive a fair trial in this case? And in light of all the errors that occurred in this case, I don't think you can come to the conclusion that he received a fair trial or that he was proven guilty beyond a reasonable doubt with respect to several of these counts. And I would ask that his convictions be reversed. And I believe it would just be on count two we would be asking for a new trial. Thank you, counsel. Thank you. At this time, the court will take the matter under advisement and render a decision in due course. The court stands in brief recess.